Tilghman C. J.
It appears by the return to this habeas corpus, that Peter Morris is imprisoned by virtue of a commitment by alderman Bar tram, “ the said Morris being “ charged, on oath, with having shipped himself on' board “ the ship Resolution at Liverpool, to perform a voyage from “ that port to Philadelphia, and back to any port in Europe, “ £pd with having deserted from the said ship ; to be safely “ kept until he find security to go the voyage, or be delivered by due course of law.” Th& Resolution is & Danish ship, and the captain is a Danish citizen.
If this commitment be good it must be supported by some principle of the common law, or by statute, or by the law of nations recognised as a branch of our common law.
1. The common law affords no countenance to such a commitment. Morris stands charged with no crime, and if he 'did, the commitment could only be until he found security to appear in court and answer it. But he is charged with breach of contract, the remedy for which, is by action ; and an imprisonment on an action by the captain of the ship would not be lawful, if the defendant could find bail. But no action has been brought. The prisoner then is confined, not for the purpose of safe keeping, in order that he may be forthcoming to answer any breach of our law, criminal or *395 civil, but because the captain of the ship wishes him to be kept in goal in order to prevent his running away. We have acts of assembly authorising the imprisonment of servants and apprentices in certain cases, but it has never been supposed, that without such acts they could be imprisoned. If one man agrees to serve another, and breaks his contract, the party grieved may recover damages in an action, but he cannot imprison the wrong doer by way of punishment, or for safe keeping. The common law favours liberty,' and will not endure imprisonment for any but necessary purposes. Breaches of contract are compensated by damages, and if the defendant will give bail to appear and answer the plaintiff’s complaints, there is no necessity for imprisonment in the first instance. After trial and judgment the case is different. The defendant may then be imprisoned until he makes satisfaction. But in the present instance, no damages are demanded, no trial is contemplated. The mariner is imprisoned until he gives security to perform the voyage. It is a kind of proceeding unknown to the common law, and'its justification, if it can be justified, must be sought for in some other code.
2. We have no act of assembly on this subject; but there is an act of congress, (20th July, 1790, 1 L. U. S. 134,) “ for “ the government and regulation of seamen in the merchant’s “service,” on which it is probable this commitment was founded. This act is in its terms confined to vessels bound from a port in the United States to any foreign port, or from a port in'one state to a port in any other than an adjoining state. It directs, that the master shall make his agreement with the mariners in writing, before he proceeds on the voyage, under certain penalties ; inflicts penalties on the mariners in case of non-compliance with the contract; and in the whole scope of its provisions would be highly improper to be applied to foreign vessels, with mariners shipped in foreign ports. By the 7th section of this act, it is enacted, that if any seaman'or mariner who shall have signed a contract to perform-» voyage, shall desert or absent himself from his ship or vessel, without leave, any justice of the peace within the United States, may issue his warrant to apprehend such deserter and bring him before him; and if it appears, by due proof, “ that he has signed a contract zvithin .the intent “ and meaning of this act, and that the voyage is not finished, *396 “ or tile contract otherwise dissolved, and that such seaman “ or mariner has deserted, &c.; the said justice may com- “ mit hini to the common gaol, till the ship or vessel shall be “ ready to proceed on the voyage, or till the master shall re- “ quire his discharge, and then to be delivered to the master, “ &c.” Now this proceeding being expressly confined to contracts ■within the intent and meaning of this act, refers to the first section which describes the contract, and therefore can only apply to cases where the seamen were shipped in a port of the Ui\ited States.
3. The point principally relied on in support of this commitment, is the usage and practice of nations, and several masters of vessels have deposed, that in the ports of England, France, Holland, Denmark and Sweden, mariners who desert are imprisoned by the authority of the government, at the request of their captains. . I know also, that justices of the peace have often assumed the same power in the United States, but I do not know that either in England or the United States, such proceedings have been sanctioned by judicial authority. I can perceive great convenience from the exercise of such a power under proper regulations, and very great inconvenience from the want of it. But I cannot say that from any evidence which has been adduced to us, there prevails such an uniform and general practice, as is entitled to the name of the law of nations. We once had a treaty with France providing for the arrest and delivery to the consuls of each nation, of mariners and seamen who had deserted. Consular Convention, 14th November, 1788, art. 9. and such a treaty seems almost necessary between commercial nations. But the making of a treaty, rather implies that there was no usage of nations under which such arrest could be demanded. The imprisonment of a man, and delivering him up to be carried out of the country, is an act of very high authority, and when it is permitted, should be guarded by forms which may prevent abuse. Where there is no treaty congress may provide for it by law, and probably they will, when the subject is brought before them. In the mean time, it is better that some inconvenience should be submitted to, than that the liberty of all seamen, who frequent the ports of the United States, should be subject to the controul of every inferior magistrate, proceeding upon. vague and uncertain evidence of the.custom of foreign nations. I am therefore of opinion, that the prisoner should be discharged.
*397 Yeates J.
The provisions of the act of congress “ for the “ government and regulation of seamen in the merchant’s “ service,” passed the 20th July, 1790, are calculated to advanee the trade and navigation of the United States, and are expressly confined to our own seamen. The 7th section necessarily refers to the 1st, when it speaks of contracts within the “ intent and meaning of this act.” I know of no law, either of the general government, or of this commonwealth, which authorises an alderman or justice of the peace, to proceed summarily against a mariner who has deserted a foreign merchant ship, or absented himself without leave, by committing him to the common gaol, there to remain until ship shall be ready to proceed on her voyage. Such mariner may be proceeded against for a breach of his shipping agreement, in a civil suit only. I have no doubt of instances having occurred in Great Britain and Denmark, of a magistrate’s interposing in such a case; bat until it be ascertained that such a measure has been recognised by the judicial authority of the country, that circumstance would not alter my sentiments on this subject, on the ground of national comity. Inconveniences may be suffered by the owners and masters of foreign vessels, whose crews may desert upon their arrival in our ports, but these evils may be remedied by treaties, or a law of congress bottomed on extended principles of public policy.
I am of opinion, that Peter Morris be discharged from his imprisonment,
Brackenridge J. concurred.
Prisoner discharged.